# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID CHIMERA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-287-JHP-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant David Chimera requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 30, 1960, and was forty-nine years old at the time of the administrative hearing. He earned his GED while serving in the United States Army from 1980-1983 (Tr. 30). He has past relevant work as a floor installer, convenience store manager, and retail store assistant manager (Tr. 20). The claimant alleges that he has been unable to work since September 1, 2008, because of spondylosis, degenerative disk disease, and joint problems (Tr. 153).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on February 6, 2009. The Commissioner denied his application. ALJ Michael A. Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 17, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk/sit for six hours in an eight-hour work day (Tr. 14). Due

to mental limitations, the ALJ also found that the claimant could perform both simple and detailed tasks which do not require interaction with the general public but would be unable to perform complex, skilled tasks (Tr. 14). While the ALJ concluded that the claimant was unable to return to his past relevant work, he nonetheless found that claimant was capable of performing other work in the economy, *i. e.*, general clerk, records clerk, and bench assembler (Tr. 21). Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by failing to find additional severe impairments at step two; (ii) by failing to properly analyze the claimant's credibility; (iii) by failing to properly analyze the claimant's RFC at step four due to an improper analysis of the medical evidence of record; and (iv) by finding that the claimant was capable of performing work in the national economy at step five. The undersigned Magistrate Judge finds that the claimant's second and third contentions persuasive.

The claimant began receiving treatment from the Veteran's Administration on October 8, 2008. The claimant had a positive PTSD screening on October 29, 2008, and reported that he was experiencing pain, headaches, problems walking, and shortness of breath (Tr. 258, 261). The claimant reported that he has had a difficult time sleeping since his discharge from the Army in 1983 (Tr. 246). The claimant underwent a physical therapy consult on November 13, 2008 in order to evaluate his back and right shoulder pain (Tr. 243). He reported that sitting in certain chairs and bending worsened his pain

and that while his medication made him "loopy," it did not alleviate his pain (Tr. 244).

He was noted to have a "poor tolerance" to the treatment provided, and he was advised to

try using hot and cold modalities at home and engage in gentle stretching exercises (Tr.

244).

The claimant underwent a psychiatry assessment on November 12, 2009 in which

the diagnosis was PTSD (by history), personality disorder (by history) and chronic pain

and his GAF was 65 (Tr. 392). On July 7, 2009, the claimant sought treatment because

he was losing track of time, and complained of forgetting what he was talking about in

the middle of conversations, forgetting where he is and what he is doing, and spacing out

(Tr. 365). At that time, his medications included hydrocodone, sertraline, sulindac,

tramadol, and trazodone (Tr. 366). On July 10, 2009, treatment notes indicate that the

claimant went on a "20 minute tirade" about his doctors, neighbors, and an arrest in

response to an inquiry as to how he was doing (Tr. 361). The assessment at that time was

antisocial personality disorder, insomnia, and mood disorder, and his GAF was a 60 (Tr.

363). He was still having "lots of problems" with his neighbors and becoming easily

agitated on September 18, 2009 (Tr. 339).

The claimant applied for disability benefits with the Department of Veteran's

Affairs in October 2008. The resulting decision was that the claimant's low back injury,

upper back injury, left ankle injury, and sleep disorder were not connected to the

claimant's military service and were therefore not compensable and while the claimant's

fifth matacarpal fracture, third metatarsal fracture, and nose fracture were related to his

military service, he was granted a 0% evaluation for each disability (Tr. 312). The decision did, however, grant the claimant a 10% combined evaluation based on the service-related injuries in combination (Tr. 313).

The claimant's treating physician Dr. Mark Rogow, M.D. submitted a letter dated January 14, 2010 which stated that the claimant "suffers from depressive disorder with an atypical psychosis and PTSD" along with "arthritis of [the] spine, hands, elbows, an ankles" (Tr. 393)  Dr. Rogow opined that the claimant's conditions were "created by situations and traumas suffered while in the military" (Tr. 393).  Finally, Dr. Rogow wrote that claimant was "totally and permanently disabled" (Tr. 393).

The claimant was evaluated by state examining physician Dr. Mohammed Quadeer, M.D. on April 9, 2009 (Tr. 272-78).  During the interview portion of the exam, the claimant stated that he had been diagnosed with degenerative disc disease of the lumber spine and spondylosis, which worsened following a car accident in 1989 (Tr. 272).  He reported an inability to stand for more than 15-20 minutes, problems with anxiety and depression, and problems with both of his hands (Tr. 272).  His medications included tramadol, trazadone, sertraline, temazepam, and acetaminophen (Tr. 272).  Dr. Quadeer's assessment was that claimant suffered from lower back pain of long duration, degenerative disc disease of the lumbar vertebrae of L1 through L5 by history, spondylsis of the lower lumbar vertebrae, neck problems due to degenerative disc disease, anxiety, and depression (Tr. 274).  The claimant exhibited a slightly reduced range of motion in his back and neck and reported pain upon movement (Tr. 276, 278).

State reviewing physician Dr. Ron Smallwood, Ph.D. completed a Psychiatric Review Technique on April 13, 2009 (Tr. 279-95). Dr. Smallwood categorized the claimant's symptoms under the umbrellas of affective disorders and anxiety-related disorders, and those symptoms included the following: i) depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, and difficulty concentrating or thinking; and ii) generalized persistent anxiety accompanied by motor tension and apprehensive expectation (Tr. 282, 284). Dr. Smallwood found that claimant had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 289). Further, the Mental Residual Capacity Assessment reveals that Dr. Smallwood opined that the claimant was moderately limited in his ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to interact appropriately with the general public (Tr. 293-94).

State reviewing physician Dr. Luther Woodcock, M.D., completed a Physical Residual Functional Capacity Assessment on April 14, 2004 in which he opined that claimant was capable of occasionally lifting 20 pounds, frequently lifting ten pounds, standing and/or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday (Tr. 298). Dr. Woodcock did not find that claimant had any additional physical limitations (Tr. 297-304).

The claimant presented for a neuropsychological screening with Dr. Patricia Walz, Ph.D. on July 6, 2010 (Tr. 622). Dr. Walz first reviewed claimant's medical records, and noted claimant's diagnoses of low back pain, insomnia, anxiety, bursitis, headache, mood disorder, PTSD, depressive disorder, and antisocial personality traits (Tr. 622-23). Dr. Walz also noted a March 2010 VA medical record which stated that the claimant became "agitated at the placement of a medication-seeking flag in his chart" and that he "was very loud and verbally aggressive" (Tr. 623). The claimant has blamed "all of his physical and mental issues on the military and doesn't know why people won't write that down" (Tr. 623). During the interview portion of the examination, the claimant reported that his back became so badly injured while he was in the military because he was thrown out of bed in the middle of the night and that he had witnessed a couple of deaths (Tr. 624). The claimant stated that he believed had had been "gassed" while in the military, and blames the military for his children being born handicapped (Tr. 625). The claimant also admitted to throwing a knife at a coworker in the past and having a problem with authority (Tr. 625). The claimant told Dr. Walz that he did not believe that counseling had benefitted him (Tr. 626). Dr. Walz observations of claimant's behavior was that he was obnoxious, argumentative, and quite disinhibited (Tr. 628). Following objective testing, Dr. Walz's conclusion was that claimant's "presentation was of significant behavioral disinhibition, suspicious thinking, and external locus of control," and opined that his "most significant problem is personality disorder with schizotypal traits," noting his paranoid thinking, odd thinking, inappropriate affect, lack of close friends, and

excessive social anxiety related to his paranoid thinking (Tr. 629). The diagnosis was schizotypal personality disorder and his GAF was assessed to be 35-40 (Tr. 629).

Dr. Walz also completed a Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue, and Hysterical Paralysis based on her evaluation (Tr. 618-21). Dr. Walz found that claimant had extreme limitations in the following functional categories: i) relate to coworkers; ii) interact with supervisors; iii) maintain attention for extended periods of time; iv) maintain concentration for extended periods of time; v) work in coordination or proximity to others without being distracted by them; vi) complete a normal workday (without interruptions from psychologically-based or pain-related symptoms); vii) complete a normal workweek (without interruptions from psychologically-based or pain-related symptoms); viii) avoid undue constriction of interests; ix) behave in an emotionally stable manner; x) deal with the general public; xi) accept instructions and respond appropriately to criticism from supervisors; and xii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 618-20). Dr. Walz also found that claimant had marked to severe limitations in several functional categories, including remembering very short and simple instructions, carrying out very short and simple instructions, making simple work-related decisions, performing at a consistent pace, responding appropriately to changes in work settings, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness (Tr. 618-20).

A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment which is severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a *de minimis* showing of impairment. *Hawkins*, 113 F.3d at 1169, *citing Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). The claimant specifically raised the argument that his personality disorder was a severe impairment prior to the administrative hearing in his attorney's brief, but the ALJ made no mention whatever of the claimant's personality disorder (or any of the evidence documenting it) in discussing his other impairments. *See, e. g., Spicer v. Barnhart*, 64 Fed. Appx. 173, 177 (10th Cir. 2003) (reversing ALJ's decision when he failed to even mention an impairment making it impossible to determine if he formed any conclusion regarding the impairment individually or in combination with other impairments when evaluating the RFC) [unpublished opinion]. At a minimum, the ALJ should have evaluated and discussed the underlying evidence of the claimant's personality disorder and explained why he did not find it to be a severe impairment. *See Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See*

*also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

With that said, because the ALJ did not conclusively deny benefits at step two, the fact that he apparently did not find the claimant's personality disorder to be a severe impairment alone is not a basis for remand. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (noting that "at step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity[,]" . . . but finding that error was harmless if benefits were not denied "conclusively at step two and [the ALJ] proceeded to the next step of the evaluation sequence.") [internal quotation marks omitted, citations omitted]. But the ALJ was *still* required to consider the effect of *all* of claimant's impairments, both severe and non-severe, on his ability to work at step four. *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean that the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted] [unpublished opinion]. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 679 (10th Cir. 2008) [unpublished opinion].

In this case, the claimant was diagnosed with antisocial personality disorder at the VA clinic from which he was receiving medical care as early as July 10, 2009 (Tr. 361). In addition, there are notations in the medical evidence where medical providers found that claimant was difficult, irritable, and hostile during visits (Tr. 361, 573, 577). The ALJ, however, never mentioned the claimant's diagnosis of personality disorder in his opinion nor discussed any of the evidence related to the claimant's personality disorder, which is error. "When, as here, an ALJ does not provide any explanation for rejecting significant medical evidence, we are 'left to speculate what specific evidence led the ALJ to [his conclusion],'" *Spicer*, 64 Fed. Appx. At 177, *quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), and casts this Court in the improper role of fact-finder. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"). Thus, the failure of the ALJ to consider the claimant's personality disorder throughout his analysis necessitates remand for a discussion of this impairment, *especially* in light of the new evidence accepted and incorporated into the record by the Appeals Council. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record . . . assess[ed] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard.").

Because the ALJ failed to properly analyze the medical evidence as outlined above, the decision of the ALJ must be reversed and remanded. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma